We have four this morning. We'll hear two, I would imagine, and then take a brief break before hearing the final two. Our lighting system is certainly familiar to many of you here. Watch it carefully. Red light means what red lights often mean, stop. So finish answering any questions that you may be answering at the time, but otherwise you need to stop at that time. I'll call the first case of the morning, United States v. Tapia. Mr. Page, I presume. May it please the Court? Evan Joel Page for Mr. Tapia. I work for the Federal Public Defender. Your Honors, when the government asks the Court at sentencing to take into consideration for the purposes of the Guidelines, information that is protected by 1B1.8, or when the Court does in fact use such information to calculate the Guidelines, the defendant is entitled to, under this Court's precedent, to re-sentencing without any analysis of harmless error. So long as the error is preserved, it doesn't matter whether the Court would have imposed the same sentence. That's United States v. Purser, which considers the question at length. And it certainly doesn't matter whether the Court's sentence would otherwise be erroneous. Breach of the plea agreement is the claim of error, and it independently merits relief. Counsel, let me ask you, before we get too far into this, was there a sufficient objection on the record, or are we talking about plain error review? There was sufficient objection. The government, in fact, concedes that what the defendant said at sentencing was an objection. It was a complaint about the use of debriefing material at sentencing. Its contention here about the insufficiency of that objection is that the defendant didn't, defense counsel below, didn't specifically say that it was invoking its rights under the plea agreement as opposed to the proffer agreement. I would submit that is an extremely fine error to split, given that the proffer agreement at the time of sentencing was entirely inoperative, whereas the plea agreement still determined the defendant's rights. So when the defense counsel says they've made real clear this was, they're not supposed to use debriefing material, then that is a sufficient reference to the only provision that remained in place at the time which would have regulated the use of debriefing material, which was the plea agreement. In addition, I think that the government's response after that demonstrates that it was understood by the parties at the time as a complaint about the use of debriefing material. I won't call it a model of clarity, but their response was, well, this is permitted by the rebuttal exception in the proffer agreement, which wasn't true, but it does demonstrate that they felt the need to justify the use of the debriefing material at the time. And the relief he seeks here, the defendant seeks here, is to void the plea agreement or just to be resentenced? Merely to be resentenced before a new judge that hasn't heard the advocacy that the government made below in error. And so just to be, a quick detour about the United States v. Williams case which is cited here, but does deal with the election of relief, that case says that an immaterial breach of the plea agreement might not be adequate to justify rescission of the plea agreement, withdrawal of the plea, but there's never been a suggestion, as I recall, that the materiality of the breach is a prerequisite to specific performance as a... On the issue of preservation, I want you to address the Heban case, and it seems to me in Heban there was a similar failure to identify in the objection the proper document that was the basis for the violation. Can you talk about that some? Which case, I'm sorry? H-E-B-R-O-N, Heban, Hebron? Hebron, I'm sorry, I'm not familiar. Okay. I thought it was in the briefing, but I guess it wasn't. Sorry. Sorry, it was in the briefing. I thought it was in the briefing, but I guess it was not. So... I mean, my concern in this case, you've already highlighted, because you're aware that's the most significant shortcoming in the objection, is it referred to the proffer and not to the defense? I don't believe I would need to find that authority because I think there may be a misconception. I don't think the defense referred to the proffer objection. So this is not a case where the defense says, this is a violation of the proffer agreement. What the defense said was they're not to use the debriefing information. So the objection, possibly this is a distinction with Hebron, the objection here was not an invocation of the defendant's rights under the wrong provision. It was an invocation of the defendant's rights which might have sounded in either the proffer agreement or the plea agreement, and the government's complaint now is that it wasn't sufficiently specific to exclude the wrong provision here. So here we have an objection that is potentially ambiguous, but it's cleared up by the context of the proceedings, namely the fact that the plea agreement is the only source of rights available to either party at the time. So if the court is looking for a case, I would say it's the United States v. Pinheiro, which says that they don't have to be in minute or hyper-technical detail, particularly when they're live and oral. Often when we say something like no magic words are needed, there's a but that follows and the but here is that the district court must be sufficiently aware of what the objection is and what the violation is, and you're addressing that. That's right, and I think it would be very strange to ask the, if the defense went to the trouble of identifying the proffer agreement as the source of the rights they were invoking and was incorrect, then the district court has been led astray. But if the defendant merely complains, they're not supposed to be using debriefing information. It's hard for me to understand why a district court would understand that as a reference to the source of rights which is not available anymore. So I would also submit in the alternative that the case can be reversed on plain error. The third and fourth prongs seem to be loosened under this Court's precedent for breaches of plea agreements given the significance of the rights that are at issue here. We have four very clear calls to consider information that's protected under 1B1.8 in connection with the, with the, the guideline calculation. Those are on, excuse me, pages 103, the last where they attempt to use the proffer as rebuttal. Page 230 in the live objections where they say the defendant's objection would have merit in a vacuum, but this shouldn't be considered in a vacuum. This should be considered in the context of the entire investigation including the proffer. And page 233 where they say, look, he's asking to be sentenced on the basis of 15 kilos here to be held accountable only for 15 kilos, but if you add up all the proffered admissions, he, he's already admitted 21, so at that point he's saying reject the objection, the government counsel is saying reject the objection because of the information in the proffer. So there, the error is plain. The government clearly called for the Court to use protected information in support of, in support of the guidelines calculation. So the second error, the second prong of plain error I would submit is met. The third in Kirkland and, and Williams recognized that the, the, the usual presumptions on the third prong are inverted in the cases of breaches of the plea agreement and that we usually assume that the government's advocacy affected the district court's determination. There is no statement by the district court in the record that it found the government, the, the PSR statement of 16. In connection with that, didn't the district court rely on the PSR addendum? Didn't it state that in its statement of reasons? There's a statement that it adopts the PSR and the PSR addendum. Is that right? It did. It did. But the reason that it did so, though, has to be understood, I'm sorry. No, go ahead. It has to be understood in the full context of the, of the proceedings. The, the PSR, the, the allegations in the PSR were contested. They were contested by, by an objection and the objection will not, not saying it was, would have been a reversible error not to grant it. It was, it had some force that said this is an anonymous co-defendant, an anonymous drug dealer or somebody that the government isn't even identifying who's saying five kilos a week for 13 weeks, 65 kilos. This is a, this is a, this is a, a, a, a large claim. This is a significant claim of information to, to, to put on the defendant and I, I, there isn't adequate evidence of the reliability of that and then to answer that challenge, the government used the, the proffered agreement. So the, the information in the, that was used in the proffer, it could have been used merely to replace the kilos that would be lost to that objection but it also might have been used to corroborate the PSR in that regard by saying this is a defendant who dealt on that scale. But the district court said that it relied on the PSR and the PSR addendum. It did. It did. But the reason for that. But you're, but you're saying we, we need to also conclude that it relied on what was in the proffer and that using that, the government by using that violated the plea agreement. I, I am saying that and, and the reason that I'm saying that is that the government used that as corroborative evidence. The, the, the district court's conclusion that it ought to rely on the PSR could be, have been informed, likely was informed by the arguments that the government made to corroborate the information in the PSR through the proffered, through the proffered information. But defense counsel is contesting the PSR. As I understood, I think you just said, that defense counsel is objecting to the provisions in the PSR, specifically those that relate to quantification. Isn't the purpose of the clause in the proffer agreement that the defendant doesn't come in and offer the government nuggets of information, you know, get, get government to take the bait and enter into a plea agreement with a defendant who is knowledgeable and then have the defendant back away from that knowledge or even contest or deny making previous statements? Isn't that the purpose of the clause that allows the government to rebut? That is the purpose of that, of that clause. I will tell you that clause is inoperative by the time we get to the plea agreement. The, the, the defendant, that clause was there in the proffer agreement. It said, and it was quite clear, it said, um, any evidence, any arguments, any assertions, any representations trigger a right of rebuttal. And then the defendant pled guilty, exchanging additional consideration for a plea agreement that had nothing like that. Okay. So you're saying it's superseded by the plea agreement itself, that the proffer basically is no, no longer exists for the purposes of this case. Is that correct? Precisely. But, but it is instructive. The contrast between the two provisions is instructive in telling us what the plea agreement meant. The, the contrast between a, a proffer agreement which says we have a right of rebuttal to evidence and arguments is, is, and then to go to a plea agreement which doesn't have, which merely talks about information and testimony in the context of cooperation in a 5K. Well if he had testified at trial, let's say of a third party, or I don't know if there's any co-defendants here, but let's say of a third party who's charged in an enterprise in which he's involved, would the government be allowed to utilize the proffer, uh, if his testimony differed from what was offered at the time? Certainly it would. And that, and that's clear from the plea agreement, which talks about, which says that the, the information and testimony have to be full and truthful, right? But that, but that doesn't regulate the objections that the defendant... That includes what's in the proffer agreement. In other words, if the defendant later testifies and, and, and is contrary to what he told the government at the time of the proffer, the proffer's still there, isn't it? And the government can take it out and say, well, you, do you remember meeting with the government and you told us X, Y, and Z? It can, it can. And that's, but that, the reason that it could do that is that it's permitted by the plea agreement. It's, it's not permitted by, it, it, it, what, permitted by both the part of the plea agreement and the proffer agreement. But the, the plea agreement offers the government fewer rights to do that. Specifically, it doesn't regulate the defendant's right to make objections. In that case, another contrast I think that it's, that it's helpful in the course of dealing here is to contrast the government's, the, the, the government's response, proper response if the defendant gives false or incomplete information testimony and, and, and, and to contrast that, its offer of a protection under 1B1.8 with its discussion of a 5K. In, in the discussion of the 5K, the government says that the right to offer the 5K is in its sole discretion, meaning it, that no court will regulate whether it decides to give a 5K. There is no comparable language, or it doesn't use that language anyway in connection with its decision to say that 1B1.8 is, is applicable. So I don't think the government can stand up here and now and say, well, we're essentially voiding the, avoiding the plea agreement because in our opinion, this, this objection didn't comply with the plea agreement. There has to be some manifestation of that. Let's assume I agree with you that the government violated the plea agreement. Right. But I disagree with you about the standard of review which applies. I, I think it's plain, if I think it's plain error review, then we're talking about the four prongs under plain error and, and, and your claim would still be that the district court relied on information that it got by virtue of the violation of the plea agreement in determining what this, in making the sentence, determining the drug quantity amount. Right. I guess my problem with that is, is if the district court relied on the PSR and the PSR addendum and it had this information about the drug quantity amount, which came from the, a co-defendant, what's the indication that the district court relied on what was introduced by way of the violation of the plea agreement? What's the evidence that the district court relied on, on that? Well... And not what was in the PSR. Well, first, I would say Kirkland and Williams invert the burdens on that and say that it is the, it is the government's burden to show that the district court would have imposed the same sentence otherwise, not merely that it could have, that the information was there, but it would have found the evidence sufficiently credible to do that. And second of all, I think the behavior of the parties speaks a lot to that as well. Why did the government offer all of this proffered information in support of this objection if that objection was, was independent, was in its view independently adequate, if, if, excuse me, if that information was independently adequate and the, the objection was sure to be overruled? I see that I'm out of time. May it please the court, Christina Williams on behalf of the United States. Under any standard of review, Tapia's claim fails because the government did not breach the plea agreement or its supplement and this court should affirm the district court. Under this court's case law, the court asks whether the government's conduct was consistent with the defendant's reasonable understanding of the plea agreement. And that inquiry begins with the plain language of the plea agreement itself. Here the operative document is the plea agreement supplement found at pages 67 to 68 of the record. And the first paragraph of that provides that Tapia will provide truthful and complete information. This is a continuing obligation from debriefing all the way through sentencing in the district court. The second paragraph speaks to the 5K motion that the government will file if the defendant has provided substantial assistance. And finally, turning to the third paragraph, provides two things. First, section 1B1.8 of the sentencing guidelines applies. And then it also provides if, and that's a crucial if, the government determines that Tapia provided complete and truthful information. It will not use his proper information to increase his guideline level. So here, Tapia's reasonable understanding of the plea agreement is that if he provided complete and truthful information and testimony, not just testimony, also information, which is a much wider subset, then the government would not use his proper information. Next, we look at what actually happened. As the court noted, the PSR had independent evidence that the court relied on, and that was Codefendant 1 attributed 5 kilograms per week for 13 weeks. That would yield 65 kilograms. The PSR also used admission of 2 kilograms to arrive at 67 kilograms of methamphetamine for the drug calculation. Next, there were written objections. Tapia denied the 65 kilograms of methamphetamine. And then in response, the government pointed to two things. First, it discussed Codefendant 1's testimony, why that was reliable for the 65 kilograms. Next, it noted Codefendant 2 attributing half a kilogram of marijuana. And then finally, the government introduced the proper information, but after it noted to the district court that that could not be used to increase his sentence. Next, we get to sentencing, where Tapia's counsel says that... Well, and what was it used for? What was it used for? It was introduced by the government with the caveat that it's not to be used to increase the sentence. So what was it used for? So at sentencing, we see that it is used in response to Tapia's counsel arguing that my client says he's only responsible for 6 to 8 kilograms of Codefendant 1, and he's accountable for 5 to 15 kilograms. So the government, at sentencing, after relying on the information gleaned from three different codefendants, then says that and he admitted to 21 kilograms, which is more than the 5 to 15. So the government was using that to ensure that the court had the full and truthful information before it at sentencing, because he couldn't have possibly only been accountable for 5 to 15 kilograms after admitting to 21. The government doesn't take the position that he breached the agreement, is that correct? Either the proffer or the plea agreement, is that correct? I mean, the government offered him, got the 5K for him, so they're precluded from arguing that he breached either one of the agreements, is that right? Well, the government contends that the plain language of the plea agreement allowed the government to do what it did to introduce the proffer information, because in the government's opinion, he did not provide full and truthful information. So it's not necessarily a matter of he breached first, so we get to breach. It's a matter of the plain language of the plea agreement supplement. Is there any obligation on the part of the government, either in the jurisprudence or otherwise, even by custom or practice, to so advise defense counsel that the government considers the line to have been crossed on the truthfulness obligation, and that the government intends to file into the record or produce in court the results, any part of the proffer? Or can the government just unilaterally decide that we're going in with the proffer information? So the government, you know, the first notice given to the defendant is his very agreement to the plea agreement supplement itself, which essentially advises him, if you do not provide full and truthful information, the government can introduce your proffer. As far as any requirement from case law, in United States v. Miller, that panel did interpret the Castaneda opinion to require that in a breach of a cooperation agreement before the government uses information, that it provides notice. And, you know, that notice could be during the sentencing hearing, could be in written objections, which is exactly what happened here. After Tapia filed his objections to the PSR, the government gave notice in that response that it intended to use proffer information, and then again at sentencing it did. So the defendant had ample opportunity to, you know, have a full rebuttal and argument concerning that, which would satisfy any obligation from Miller. And I can give the court the cite for that, if that would be helpful. That is 406 F. 3rd. 323. So here the prosecutor's use of Tapia's proffer admissions was within the bounds of the plea agreement supplement, and it was certainly reasonable. There's an argument made by the appellant in his reply that the government is essentially saying, well, no defendant can ever challenge his drug quantity. He can't make any objection at all. That would introduce proffer. That's not the case here. Here the line is crossed when the defendant lies to the court, which is what Mr. Tapia did. The government acted reasonably and fulfilled its responsibility to the court to ensure it had full and truthful information. Now, I wanted to . . . Mr. Page is arguing that basically co-defendant number one was just asserting to grand a scheme, it wasn't plausible or whatever the better way to characterize it may be, and that you needed better evidence. Is that in itself a violation of admissions he had made? When did he cross the line? What is in the objection otherwise that crossed the line and violated his agreement? Well, if he would have simply stopped at co-defendant one's testimony is not reliable, I didn't sell him the five kilograms a week for 13 weeks, perhaps that would have not crossed the line. But when he went further and he said, you know, his counsel said on his behalf, I'm only responsible for five to 15 kilograms, that's when it crossed the line because that's what was directly contrary to his proffer. Is it not essentially the equivalent of saying the government's evidence only shows five to 15? Isn't that basically the objection? I don't have to offer evidence. I mean, maybe it's the phrasing of it, but it does seem to me the objection is that you have to present credible, proper kind of evidence to the . . . that can be relied upon by district court, including the PSR, and what's reasonably asserted there. And it seems to me one way to look at that objection is they're saying, looking at the PSR, all I'm really . . . you have shown I'm responsible for, that the judge ought to be relying on is five to 15. Is that a violation? Or is it just . . . are you just saying the words that that was expressed in created the violation some other words may not have? I think here we do have to look at the specific language that was used in the argument to the court, and then specifically what this plea agreement supplement provides. So I'd like to respond to a few points made by the appellant here. The government certainly does not concede that the error was preserved, and the government provided in its briefing and still asserts that plain error review applies here. The objection was made to quote briefing information. That's at page 226 of the record. And whether or not the proffer agreement or the plea agreement, legally whichever one is binding, for purposes of that objection, we look at whether there was a live question in the district court at that point as to whether the proffer agreement or the plea agreement or something else. And the government's response to the defendant's objections actually cited to the proffer agreement. So at least at that point, the district court very well could have interpreted this objection to debriefing information as being a violation of the proffer agreement versus the argument about a violation of a plea agreement that's made here. So there was not a specific enough objection made in the district court to provide an opportunity for cure in a discussion, you know, the ability of the district court to correct that error. And then also, you know, the Purser case tells us that applying plain error review to breach of plea agreement cases would encourage proper objections and allow for the district court to be able to correct it in the first instance if necessary. So the government's position continues that plain error review applies here, and all four prongs of that cannot be satisfied. And as to an argument that under plain error, an automatic breach becomes plain error, that's not the case. The government tells us that we must still continue through each prong of plain error analysis, and even more so, that not all breaches will be clear error. And here, you know, when we look at the actual objection made, the use of the information and the plain language of the plea agreement's supplement itself, it certainly would not be clear error. And in any event, the other four prongs cannot be proven, as shown in the government's brief. Finally, Judge Graves noted that the district court adopted the PSR, and that's very much the case here. And even if the district court had solely relied on the proffer information and found Codefendant 1's information to be incredible, it couldn't have reached the 45 kilograms. It would have stopped at the 21 of Tabea's admission. So it simply can't be the case that the district court relied on that to reach the 45 or more kilograms drug quantity. So, in conclusion, because the government did not breach the plea agreement or its supplement, this court should affirm. And if the panel has no further questions, the government will rest on its briefs. Thank you, counsel. I thought I might clear one matter up and then take any questions. If the court thinks that the government has a right of rebuttal to misstatements made and objections, then it goes to denials of things that the defendant said in the proffer agreement. In other words, the government can use the proffer agreement in order to correct misstatements by the defense that deny what he said in the proffer agreement. Well, Codefendant 1, who put the 65 kilograms, who attributed 65 kilograms to the defendant, was not mentioned at all in the proffer agreement. So it's difficult to understand how the use of the proffered material would have even been available to the government even as rebuttal under the terms of the proffer agreement if that rebuttal exception had somehow survived. It was merely really just using the proffered agreement in retaliation for an objection that it didn't believe to be well-founded. But the objection's based on the quantity, right? The objection is based on the quantity. Not so much on which person attributes it. The objection is, District Judge, I shouldn't be held responsible for Y amount. I should be responsible only for X amount, not in terms of who attributes how much, whether it's for sentencing or whether it's in the proffer agreement. Quantities that are admitted in the proffer agreement, in order to replace quantities that are defeated by objection, then the 1B1.8 protections really are quite illusory. I mean, if that is permissible rebuttal, then there really is no protection at all in the 1B1.8. If I understand the government's position on this is that your objections constituted a denial on behalf of the client that not more than 15 were sold. Is that what the objection said? And that would be in contradistinction to what was in the proffer? I want to speak carefully about that. When he said he should be accountable for 5 to 15 kilos, that's not saying he's only dealt 5 to 15 kilos. That part is saying this is the government's evidence isn't sufficient to show more than that. Let's assume that he did, that cooperating defendant 1, information is worth something. It's not worth 65 kilos. I think you should hold him accountable only for 5 to 15 kilos. That's not a denial of what is said in the proffer. That's part of my exchange with your friend on the other side, which is, is it just in the wording? If it said that the government in the PSR does not have usable, it's not usable information in the PSR that would show more than 15, as opposed to language that says I didn't sell more than 15, is it in the phrasing? And how much does that play into your argument? It's not, in my opinion, it's not in the phrasing at all. And the reason for that is that the plea agreement simply doesn't regulate the objections that the defendant makes. It simply doesn't regulate the objections that the defendant makes. The proffer agreement does. It talks about evidence and arguments, assertions, representations. But the plea agreement is talking about information and testimony. And so that, in the context of a 5K, is talking about the defendant's personal assertions of personal knowledge in court or to not analysis of the evidence. Now, I do want to be clear, so I'm not misstating anything. There are statements and in by this attorney that say we deny, the defendant denies dealing this much methamphetamine. Oral statements at the hearing? I'm sorry? Oral statements by the attorney? Well, I think they're in the filing as well. Oral and written statements. That's not the way I hope our offices would make that objection. This is retained counsel. I'm accountable for what he says here. But my submission to you is that all objections to the PSR are effectively ways of testing the government's evidence. When the unsworn assertions of counsel about the facts are not really cognizable at sentencing at all. And so, in any case, they're not regulated by the plea agreement, which is not talking about, which is talking about information and testimony by the defendant, not the claims of counsel and an objection. It would be a real elephant in a mouse hole to say that the words information and testimony that are in the plea agreement encompass the, regulate the defendant's ability to make objections. Always effective to refer to Scalia at the end of an argument. Thank you. Thank you both for your presentations this morning. I'll call the next case of the morning. Freddie Lee Brown versus Mary Vagelan.